<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STAYINFRONT, INC., et al | : | |
| | : | |
| Plaintiffs, | : | |
| v. | : | CIVIL 05-4563 (SRC)(MAS) |
| | : | |
| WARREN TOBIN, et als | : | |
| | : | |
| Defendants. | : | |

**<u>REPORT AND RECOMMENDATION</u>**

This matter having come before the Court on a Motion for Final Judgment by Default by Plaintiffs for compensatory and punitive damages against Defendants, dated August 7, 2007. (*See* Docket, Doc. No. 93.) Plaintiffs, StayInFront, Inc. ("SIF") and NAP Associates ("NAP") (collectively, "Plaintiffs"), seek compensatory damages from Defendants Warren Tobin ("Tobin"), Tobin Family Limited ("TFL"), and compensatory and punitive damages from Matthew Young ("Young") and Employment Associates Limited ("EAL"), with respect to Plaintiffs' claims for breach of contract and tortious interference with contract. (First Am. Compl. ¶ 6, ¶ 8, Nov. 16, 2005.)

This Report and Recommendation is issued pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons expressed below, it is respectfully recommended that the Court enter an Order granting Plaintiffs' motion for final judgment by default. It is further recommended that the Court grant Plaintiffs an award of compensatory damages in the amount of $1,307,535.67, which should be apportioned as follows: Defendants Tobin and TFL are liable for compensatory damages totaling

$944,310.90, which includes consideration paid under the Stock Purchase and Severance Agreements; Defendants Tobin and TFL are liable, jointly and severally, for the amount of $363,224.74, which includes attorneys fees for both the New Jersey and the New Zealand actions.

Defendants EAL and Young are also liable, jointly and severally, for the amount of $363,224.74. It is also recommended that the Court deny Plaintiffs' motion for punitive damages against Defendants EAL and Young in the amount of $1,816,231.70 - reflecting an amount five times the compensatory damages for which they are jointly and severally liable.

## BACKGROUND

Tobin was the Director and Executive Vice President of SIF until 2002 when SIF discovered that Tobin was having an affair with a co-worker, and dismissed him. Tobin agreed to a Stock Purchase Agreement in which NAP paid TFL U.S. $782,882.36[1] for his stock in SIF and Splashnet.com, Inc.[2] (First Am. Compl. ¶ 28, ¶¶ 40-41, ¶ 43.) Tobin and SIF also entered into a Severance Agreement that paid Tobin six months worth of severance pay totaling U.S. $91,428.57.[3] (First Am. Compl. ¶ 2.) The Severance Agreement also included a general release, a covenant not to sue, and provided for specific remedies in the event Tobin materially breached either agreement. (First Am. Compl. ¶ 31, ¶¶ 34-35.) Plaintiffs and Defendants Tobin and TFL signed the agreements, and they are legally binding.

---

[1] United States Dollars.

[2] Splashnet.com, Inc. is a separate company from which W. Tobin received shares when he was an officer and employee of The Great Elk Company, a corporation acquired by SIF's parent corporation, Redi-Direct Marketing, Inc. in 2000. (First Am. Compl. ¶¶ 18-20.)

[3] This amount is equivalent to US $91,428.57 as of August 2007. (Sup. Cert., ¶ 10.)

The First New Jersey Action

In 2003, TFL claimed it was entitled to an additional U.S. $100,000 payment under the Stock Purchase Agreement. (First Am. Compl. ¶40.) Believing he was owed money, Tobin brought suit in the Superior Court of New Jersey ("First New Jersey Action") claiming that the Stock Purchase Agreement was valid and enforceable. (First Am. Compl. ¶ 7.) The parties settled the suit and Plaintiffs paid Tobin an additional US $70,000. (Pl. Br. Quantifying Damages 10, December 29, 2006.)

The New Zealand Action

While litigating the First New Jersey Action, Tobin and TFL entered into an agreement with two lay advisors, Defendants EAL and Young (First Am. Compl. ¶ 9), where the parties agreed that immediately after entering into a settlement agreement to resolve the First New Jersey Action and receiving a monetary settlement payment under the Stock Purchase Agreement, the four parties would commence an action in New Zealand. The parties did so, and claimed in the New Zealand Action that the Stock Purchase Agreement was invalid. (First Am. Compl. ¶ 9.) The New Zealand action commenced on October 5, 2004 and asserted claims for wrongful termination against SIF. (First Am. Compl. ¶¶ 72-73.) However, on August 18, 2005, the New Zealand Employment Authority dismissed the action because it was barred by the terms of the agreements. (First Am. Compl. ¶ 77.)

The Second New Jersey Action

On August 1, 2005, Plaintiffs brought action against Defendants in the Superior Court of New Jersey. (Pl. Br. Quantifying Damages 15.) The Plaintiffs' complaint included a breach of contract claim against Defendants Tobin and TFL and a tortious interference with contract claim

3

against Defendants EAL and Young. (Pl. Br. Quantifying Damages 15.) On September 20, 2005, the Defendants removed the action to the United States District Court for the District of New Jersey. (Pl. Br. Quantifying Damages 15.) However, Defendants refused to participate in discovery proceedings, and on February 21, 2006, W. Tobin, J. Tobin and Young submitted three separate letters to the Court, dated February 20, 2006, February 16, 2006 and February 18, 2006, respectively (the "Letters"), (Buckley Cert., Exh. M.). The Letters stated the Defendants "would no longer comply with the Court's Orders or participate in this litigation." (Pl. Br. Quantifying Damages 89.) In response to these statements, the Hon. Faith S. Hochberg, U.S.D.J., entered a default judgment as to liability against Defendants on April 27, 2006. (Hochberg Op. 1, April 27, 2006.)

On August 11, 2006, the Hon. Patty Shwartz, U.S.M.J., entered an order requiring Defendants' former counsel, Riker, Danzig, Scherer, Hyland and Perretti, LLP, to produce documents and materials relevant to Plaintiffs' damage claims. (Pl. Br. Quantifying Damages 17.) On November 3, 2006, the Hon. Stanley R. Chesler, U.S.D.J., affirmed Judge Shwartz's August 11, 2006 Order. (Chesler Op. 1, November 3, 2006.)

On December 29, 2006, pursuant to the December 22, 2006 order to submit certifications, affidavits and legal memorandum to quantify their damages claim issued by the Hon. Claire C. Cecchi, U.S.M.J., Plaintiffs filed certifications and a brief in support of their application to quantify their damage claims against Defendants. (Lipsky Letter, 1, Nov. 7, 2007.) Defendants did not oppose Plaintiffs' application. (Lipsky Letter, 1.) At the Court's request, on August 7, 2007, Plaintiffs filed supplemental certifications documenting additional damages incurred since Plaintiffs' original December 29, 2006 filings. (Lipsky Letter, 1.) On October 3, 2007, Judge Cecchi scheduled a proof hearing for November 30, 2007. (Lipsky Letter, 2.)

4

This Court assumed magistrate duties in this matter in November 2007. Following a review of the submissions, the Court decided to rule on the papers.

## DISCUSSION

First, Plaintiffs seek to recover from Defendants Tobin and TFL a total of US $ 944,310.93[4] in payments made to defendants pursuant to the Stock Purchase and Severance Agreements. (Sup. Cert. ¶ 9, August 7, 2007.) Plaintiffs claim that they are entitled to damages resulting from Defendants' breach of contract. Second, Plaintiffs assert that they have incurred a total of US $363,224.74[5] (Sup. Cert. ¶ 10.) in damages, representing attorneys fees for both the New Zealand Action and the Second New Jersey Action, and seek to recover that amount from all Defendants, who are jointly and severally liable. (Sup. Cert. ¶ 9.) Lastly, Plaintiffs request punitive damages from Defendants EAL and Young for their tortious interference with the Stock Purchase and Severance Agreements, as evidenced by the New Zealand Action. (Sup. Cert. ¶ 11.) Plaintiffs seek a total of U.S. $1,816,123.70 in punitive damages. (Sup. Cert. ¶ 11.) Plaintiffs' punitive damages claim reflects a sum of five times the amount of compensatory damages they assert are attributable to EAL and Young.[6] (Sup. Cert. ¶ 11.)

---

[4] This amount reflects the $782,882.36 for stock in SIF and Splashnet.com, the $70,000.00 for settlement reached between SIF, NAP and Tobin, and US $91,428.57 (equivalent to NZ $ 120,000.00 as of August 2007).

[5] More specifically, Plaintiff's New Zealand counsel, the law firm of Bell Gully, has billed Plaintiffs the sum of US $230,932.52 for legal services and expenses related to the defense of the NZ Action. (Sup. Cert., ¶ 9) Plaintiffs' US counsel, Cole Schotz Meisel Forman & Leonard has billed Plaintiffs the sum of US $132,292.22. (Sup. Cert., ¶ 9.)

[6] US $132,292.22 (Counsel fees in United States) + US $230,932.52 (Counsel fees in New Zealand) X 5 = $1,816,123.70.

5

I. **Plaintiffs' Claims Against Tobin and TFL**

(A) **Compensatory Damages Under the Stock Purchase and Severance Agreements**

Under contract law, compensatory damages are those that put the innocent party in the same position he or she would have been in had the contract been completed. *Totaro, Duffy, Cannova & Co., L.L.C. v. Lane, Middleton & Company, L.L.C.*, 191 N.J. 1, 12-13 (N.J. 2007). The position of the innocent party is determined by "what the parties reasonably expected" when forming the contract. (*Id.* at 14.) Moreover, a "defendant is not chargeable for the loss that he did not have reason to foresee as a probable result of the breach when the contract was made." (*Id.*)

Here, both Plaintiffs' and Defendants' reasonable expectations are easily determined, as they agreed to the remedies in the event of a breach of the Stock Purchase and Severance Agreements. Based on Tobin's material breach of the Stock Purchase and Severance Agreements, the parties stipulated and agreed that Plaintiffs could recover the following: (1) the consideration paid to TFL and/or W. Tobin under the Stock Purchase Agreement and Severance Agreement; and (2) attorneys' fees incurred. (First Am. Compl. ¶ 35.) The payments made by Tobin and TFL pursuant to the Stock Purchase and Severance Agreements total US $944,310.93. (Sup. Cert. ¶ 10.) Tobin and TFL are also liable, along with EAL and Young, for attorney's fees, which total $363,224.74. The amount attributable to Tobin and TFL, which includes compensatory and attorney's fees, totals $1,307,535.67.

It is recommended that the Court grant Plaintiffs' claims against Tobin and TFL in the amount of $1,307,535.67.

## II. Plaintiffs' Claim for Damages Against EAL and Young

### (A) Compensatory Damages for EAL and Young's Tortious Interference with Contract

Plaintiffs state that they are also entitled to compensatory damages resulting from EAL and Young's tortious interference with the Stock Purchase and Severance Agreements. *See Printing Mart v. Sharp Electronics,* 116 N.J. 739, 751 (1989)(recognizing the right to an action for tortious interference). The normal measure of damages for the commission of a tort is all damages proximately caused by the injury. *Schroeder v. Perkel,* 87 N.J. 53, 66 (1981). In this case, absent stipulated damages agreed to by the parties, Plaintiffs claim to have incurred damages in the form of legal fees and expenses totaling US $363,234.74, as a direct result of EAL and Young's tortious interference. (Sup. Cert. ¶ 10.)

Because Defendants share joint and several liability for attorney's fees, this Court concludes that Plaintiffs are entitled to recover attorneys fees from EAL and Young, along with Tobin and TFL, in the amount of $363,224.74.

### (B) Punitive Damages for EAL and Young's Tortious Interference with Contract

Punitive damages are appropriate when a defendant acts maliciously or in wanton and willful disregard of another's rights. N.J.S.A. 2A:15-5.12. Malicious conduct is intentional wrongdoing in the sense of an evil-minded act. N.J.S.A. 2A:15-5.10. Willful or wanton conduct is a deliberate act or omission with knowledge or a high degree or probability of harm to another who foreseeably might be harmed by a party's act or omissions and reckless indifference to the consequences of the acts or omissions. N.J.S.A. 2A:15-5.10. Furthermore, punitive damages may be "imposed to further a state's legitimate interests in punishing unlawful conduct and deterring its repetition." *Philip*

7

*Morris v. Williams*, 127 S.Ct. 1057, 1062 (U.S. 2007) (*quoting BMW of North America, Inc. v. Gore*, 517 U.S. 559, 568 (1996)). However, punitive damages must be reasonable. *See id.*

Plaintiffs rely on N.J.S.A. 2A:15-5.14 which limits claims for punitive damages to either five times the liability of the Defendant for compensatory damages or $350,000.00, whichever is the greater amount. Plaintiffs seek to recover US $1,816,123.70 in punitive damages from Defendants EAL and Young for tortious interference with contract. This amount reflects a sum of five times the amount of compensatory damages they hope to receive from EAL and Young.

Punitive damages are awarded at the Court's discretion. N.J. S. A. 2A:15-5.14(a). In this case, the Court finds that there were no additional damages beyond attorneys fees incurred, which have already been awarded under the tortious interference with contract claim. With no additional damages flowing from the claim of tortious interference against EAL and Young, it is recommended that no punitive damages be awarded to Plaintiffs.

## CONCLUSION

For the foregoing reasons, it is recommended that the Court enter an Order granting Plaintiffs' motion for final judgment by default. It is further recommended that the Court grant Plaintiffs an award of compensatory damages in the amount of $1,307,535.67, which should be apportioned as follows: Defendants Tobin and TFL are liable for compensatory damages totaling $944,310.90, which includes consideration paid under the Stock Purchase and Severance Agreements, and Defendants Tobin and TFL are liable, jointly and severally, for the amount of $363,224.74, which includes attorneys fees for both the New Jersey and the New Zealand actions.

Defendants EAL and Young are also liable, jointly and severally, for the amount of $363,224.74. It is also recommended that the Court deny Plaintiffs' motion for punitive damages

against Defendants EAL and Young in the amount of $1,816,231.70 - reflecting an amount five times the compensatory damages for which they are jointly and severally liable. The total award recommended by this Court is $1,307,535.64.

Respectfully submitted,

*[signature]*

HONORABLE MICHAEL A. SHIPP
UNITED STATES MAGISTRATE JUDGE